## EVANSVILLE AND EASTERN ELECTRIC RAILWAY ET AL. *v.* VANADA ET AL.

[No. 8,687. Filed October 8, 1914. Rehearing denied December 22, 1914.]

CARRIERS.—*Fares.—Payment by Transfer of Property.—Contracts.— Validity.*—Under §5540 Burns 1914, Acts 1911 p. 545, making it unlawful for any carrier to charge for transportation any other and different rate or rates than that fixed in the schedules and tariffs required to be filed, etc., and §5544 Burns 1914, Acts 1907 p. 454, defining and prohibiting unjust discrimination by railroads in the matter of charges for services, etc., a contract to furnish transportation in consideration of a transfer of land for a right of way is illegal and the refusal of the company to per-

form can not be enjoined, since the statute contemplates that the purchase of transportation shall be only for cash in accordance with the public tariffs.

From Posey Circuit Court; *Herdis F. Clements,* Judge.

Action by George Vanada and others against the Evansville and Eastern Electric Railway and others. From a judgment for plaintiffs, the defendants appeal. *Reversed.*

*Albert W. Funkhouser* and *Arthur F. Funkhouser,* for appellants.

*Thomas W. Lindsey* and *Charles P. Bock,* for appellees.

Ibach, P. J.—This was a suit by appellees against appellants, railroad corporations, to restrain them from refusing to carry them on their several lines of railroad between the city of Rockport and the city of Evansville, and from demanding fare from them and from refusing to issue passes to them on January 1, 1910, and from moving a passenger depot located near the home of appellees, and from refusing to discharge passengers thereat and from removing their railroad from appellees' lands, and to compel appellant Evansville and Eastern Electric Railway to place on record a deed which had been given it conveying a right of way over appellees' lands. A separate demurrer for want of facts was directed to the complaint by each appellant, and overruled. The issues were joined by the filing of answers in general denial. The cause was tried by the court, and a special finding of facts made with conclusions of law thereon. Judgment was for appellees upon the conclusions of law that they were entitled to free transportation on the lines of the railroads extending from the city of Rockport to the city of Evansville, owned by the Evansville and Eastern Electric Railway, and Evansville Terminal Railway, and operated by the Evansville Railways Company, so long as appellee George H. Vanada owns the real estate described in the complaint, and so long as the other appellees own and reside on said real estate, etc.

A number of errors are assigned for reversal, but in view of the facts as found by the trial court and the conclusions of law stated thereon, and the argument of counsel for all parties to the appeal, we are satisfied that the determination of the first error assigned, the overruling of the demurrer of each appellant to the amended complaint, determines the entire controversy. This pleading is quite long, and in view of the position which we take, it will be sufficient to refer to only the most material allegations of it. On September 22, 1904, it is averred, the defendant Evansville and Eastern Electric Railway, a duly organized railroad company, desiring to build a line of railroad from the city of Rockport to the town of Newburg, Indiana, and connect the same with the line of railroad at the time being operated by the Evansville Suburban and Newburg Railway Company, entered into a contract with George H. Vanada, for a right of way over his farm, one of the conditions of the contract being that steam was not to be used as a motive power save in the construction of the road. Subsequently this condition was violated by the use of steam for transporting freight and passenger cars, and Vanada refused to execute the deed to the right of way. On July 1, 1908, in settlement of the differences between the company and Vanada, a new agreement was entered into, in which no restraint was placed upon the railroad company's use of steam as a motive power, and as an additional consideration for the granting of the right of way is found an obligation on the part of the railroad company that during the lifetime of George H. Vanada and his wife, Charles H. Vanada and his wife, and Marion D. Vanada and his wife, it would furnish each of said persons transportation between Rockport and Newburg on its regular passenger cars and in the event that such company extended its tracks to Evansville, such transportation should be extended from Newburg to Evansville, and if the Evansville and Eastern company transported its cars from New-

burg to Evansville over the tracks of another company, it would likewise furnish transportation to Evansville. Whenever either of the Vanadas ceased to be interested in the real estate owned by said George H. Vanada, or ceased to reside on said lands, such transportation as to such person should end. On the day of the execution of such second contract a deed was made by George H. Vanada and his wife to the said Evansville and Eastern Electric Railway, by which the same right of way strip described in the second contract was conveyed to the company, the agreement to issue the passes referred to being one of the considerations therefor. The deed also provides "this deed is made subject to said written contract for transportation entered into between the grantors and grantee on July 1, 1908".

It is also averred that defendants and each of them ever since making the transportation contract have known of it and from July 1, 1908, to January 4, 1909, appellees were carried over all of the appellant roads on passes issued by the Eastern. Also that the Evansville Railways Company, with full knowledge of the transportation contract and the consideration for the same, on January 4, 1909, entered into a contract with both the Evansville and Eastern Electric Railway and Evansville Terminal Railway Company by which it leased the roads of the two companies which together formed a continuous line from Evansville through Newburg to Rockport, and has ever since been operating the roads of the two companies. On January 12, 1909, the Evansville and Eastern Electric Railway with full knowledge and consent of each of the other defendants, issued passes to appellees for the year 1909, and in August of the same year demanded surrender thereof and it threatens to refuse to carry plaintiffs on its roads and will not give them passes for the year 1910.

At the time of the execution and delivery of the second contract and the deed now in suit, the statutes of Indiana provided and do now provide, that all common carriers

must file with the railroad commission and post in their offices certain schedules showing all rates, fares and charges for the transportation of passengers and property, and prohibit such carriers from charging any different rate from that specified in such schedule. §§5540, 5544 Burns 1914, Acts 1911 p. 545, Acts 1907 p. 454. Subdivision b, §5540, *supra*, which is particularly significant, is as follows: "It is hereby declared to be unlawful for any such carrier to charge, demand or collect, directly or indirectly, for the transportation of passengers or property, or for any other service performed by it as a common carrier, any other and different rate, or rates, charge or charges, than the rate named and fixed in the schedules and tariffs required to be filed with such commission, as provided in this act, or to charge, or demand or collect, directly or indirectly for any such service any other or different rate, or rates, charge, or charges, than that adopted by such commission or ordered observed by any court." Section 5544, *supra,* provides further that "If any railroad subject hereto, directly or indirectly, or by any special rate, rebate, drawback or other device, shall charge, demand, collect or receive from any person, firm or corporation a greater or less compensation for any service rendered or to be rendered by it than it charges, * * * from any other person, * * * for doing a like * * * service * * * such railroad shall be deemed guilty of unjust discrimination, which is hereby prohibited. It shall also be an unjust discrimination for any such railroad company to make or give any undue or unreasonable preferences or advantage to any particular person, * * * in connection with the transportation of any persons or property," etc.

These statutes have never been construed by either of our courts, but the Supreme Court of the United States in deciding the case of *Louisville, etc., R. Co.* v. *Mottley* (1911), 219 U. S. 467, 31 Sup. Ct. 265, 55 L. Ed. 297, 34 L. R. A. (N. S.) 671, in which a very similar question was raised, has

rendered us valuable assistance in the case at bar. Justice Harlan, in his opinion in that case said, "Our duty is to ascertain the intention of Congress in passing the statute upon which the railroad company relies as prohibitive of the further enforcement of the agreement in suit. * * * The evident purpose of Congress was to establish uniform rates for transportation, to give all the same opportunity to know what the rates were as well as to have the equal benefit of them. To that end the carrier was required to print, post and file its schedules and to keep them open to public inspection. * * * But an examination of the schedules would be of no avail * * * if the published rates could be disregarded in special or particular cases by the acceptance of property of various kinds, and of such value as the parties immediately concerned chose to put upon it, in place of money for the service performed by the carrier. * * * The passenger has no right to buy tickets with services, advertising, releases or property, nor can the railroad company buy services, advertising, releases or property with transportation. The statute manifestly means that the purchase of a transportation ticket by a passenger, and its sale by the company, shall be consummated only by the former paying cash and by the latter receiving cash of the amount specified in the published tariffs." See also to the same effect, 4 Elliott, Railroads (2d ed.) §1612; *United States* v. *Hocking Valley R. Co.* (1911), 194 Fed. 234; *New York, etc., R. Co.* v. *Interstate Com. Com.* (1906), 200 U. S. 361, 26 Sup. Ct. 272, 50 L. Ed. 515; *Armour Packing Co.* v. *United States* (1908), 209 U. S. 56, 28 Sup. Ct. 428, 52 L. Ed. 681. If this is the construction which is to be placed on a Federal statute in language very similar to our State statute, where the regulation of railroads engaged in interstate commerce is concerned, there is no good reason for placing on the State statute intended to regulate railroads engaged in intrastate commerce· a different construction.

The legislature of this State in enacting the statute in-

volved in this suit, acting under its general police power in the control of the railroads operating wholly within this State, no doubt had for its purpose the regulation of intrastate commerce as Congress had in the enactment of the statute relating to the Interstate Commerce Commission which regulates interstate commerce. We therefore hold that the complaint fails to state a cause of action against the appellants for the specific performance of the contract involving the promise to issue transportation passes to appellees, and it matters not whether such passes shall be free passes or for a consideration as set out in the complaint. Such an agreement must be held to be illegal and void under the statutes of this State.

For the reasons stated the complaint is insufficient, and it is therefore unnecessary for us to consider the other errors assigned. Judgment reversed, with directions to sustain the demurrer of each defendant to the complaint.

NOTE.—Reported in 106 N. E. 388. As to who are passengers and when they become such, see 61 Am. St. 75. As to the validity and construction of an agreement by a railroad to give passes in consideration of a conveyance of land, see 21 Ann. Cas. 597. See, also, 6 Cyc. 1915 Ann. 570-new.