FORT WAYNE AND WABASH VALLEY TRACTION COM-
PANY v. JUSTUS, ADMINISTRATRIX.

[No. 23,233.    Filed March 28, 1917.    Rehearing denied June 29,
1917.]

1.  CARRIERS.—*Carriage of Passengers.—Free Pass.—Injury to
Person Using.—Stipulations Against Liability.—Validity.*—In
view of §5440 Burns 1914, Acts 1911 p. 545, making it unlawful
for a common carrier to collect a different rate of fare for the
transportation of passengers than that named in the schedules
required to be filed with the railroad commission, and §5444
Burns 1914, Acts 1907 p. 454, prohibiting common carriers from
charging discriminating rates and authorizing the interchange
by carriers of passes for their officers and employes, a pass over
the lines of defendant company issued to a director of an inter-
urban railroad in exchange for passes issued by the latter com-
pany to officers of the former is a "free pass," and a provision
therein to the effect that the holder of such pass assumed all
risk of accident to person and property is valid and binding, so
that there could be no recovery for his death, unless caused wil-
fully.    p. 466.

2.  CARRIERS.—*Carriage of Passengers.—Action for Death.—Wil-
fulness.—Evidence.—Sufficiency.*—In an action against an in-
terurban railroad for the death of a passenger, evidence show-
ing that decedent was killed in a collision resulting from gross
negligence of defendant's servants in the operation of its cars
is insufficient to support a charge of wilful killing, since neg-
ligence cannot be of such a degree as to become wilfulness.
pp. 469, 470.

3.  CARRIERS.—*Carriage of Passengers.—Injury to Passenger.—
Answer to Interrogatories.—Nullification.*—Where, in an action
against a carrier for the death of a passenger, the jury, in re-
sponse to interrogatories as to whether defendant's employes
wilfully killed decedent, answered, "Yes, by negligence," the
answers nullify themselves; since negligence arises from inat-
tention or heedlessness, while wilfulness cannot exist without
purpose or design.    p. 469.

From Jay Circuit Court; *James J. Moran*, Judge.

Action by Mary J. Justus, administratrix, against
the Fort Wayne and Wabash Valley Traction Company.
From a judgment for plaintiff, the defendant appeals.

(Transferred from the Appellate Court under §1394 Burns 1914, Acts 1901 p. 565.)   *Reversed.*

*Barrett & Morris, John M. Smith* and *Eichhorn & Vaughan,* for appellant.

*Jacob Denny, Abram Simmons* and *Frank C. Dailey,* for appellee.

SPENCER, J.—Appellee brought this action to recover damages for the death of her husband.   The complaint is in ten paragraphs.   Each paragraph, except the ninth, is based upon negligence.   The ninth paragraph alleges wilful injury by reason of gross negligence.   Appellant filed a general denial to each paragraph of complaint, and special affirmative answers to all paragraphs, except the ninth, in which it is alleged, in substance, that at the time decedent received his injuries, from which he died, he was riding on a free pass, which contained provisions excepting appellant from all liability for damages to his person or property while using said pass.

To the paragraphs of special answer, appellee replied by general denial and by affirmative replies, which in substance averred that the pass issued to decedent by appellant was not a gratuity but was issued for a valuable consideration in this: that the Marion, Bluffton and Eastern Traction Company, of which appellee's decedent was a director, requested the issuance of this and other passes, and in consideration therefor issued similar passes to appellant's officials.

Among many, the controlling question is presented by the pass on which decedent was riding, which was:

"FORT WAYNE AND WABASH VALLEY
1910
TRACTION COMPANY

Pass L. C. Justus, Marion, Bluffton & Eastern Traction Company, until December 31st, 1910, un-

less otherwise ordered.    Not good unless counter-signed on back by Vice-President or General Manager.                    Signed, J. Levering Jones,
                                   President."

On the reverse side of the pass is the following:

"No. 68.    Countersigned:
                    C. D. Emmons, Gen'l Mgr.

                    'Endorsement.'

Not transferable.    The person accepting and using this pass thereby assumes all risk of accident and damage to person or property.    If presented by any other person than the individual named thereon, the conductor will take up pass and collect fare.    Not good unless signed in ink by the person named in pass.    Signed: L. C. Justus."

The section of the statutes of this State relating to the carrying of passengers is as follows: "It is hereby declared to be unlawful for any such carrier to

1.    charge, demand or collect, directly or indirectly, for the transportation of passengers or property, or for any other services performed by it as a common carrier, any other or different rate, or rates, charge or charges, than the rate named and fixed in the schedules and tariffs required to be filed with such commission, as provided in this act, or to charge, demand or collect, directly or indirectly, for any such service any other or different rate or rates, charge or charges, than that adopted by such commission or ordered observed by any court."    §5540, cl. b, Burns 1914, Acts 1911 p. 545.

It is further provided by the same act: "If any railroad subject hereto, directly or indirectly, or by any special rate, rebate, drawback or other device, shall charge, demand, collect or receive from any person, firm or corporation a greater or less compensation for any service rendered or to be rendered by it than it charges * * * from any other person * * * for doing a like * * * service * * * such railroad shall

be deemed guilty of unjust discrimination, which is hereby prohibited. It shall also be an unjust discrimination for any such railroad company to make or give any undue or unreasonable preference or advantage to any particular person  *   *   *   in connection with the transportation of any person or property," etc. §5544 Burns 1914, Acts 1907 p. 454. The latter part of said §5544 has the following proviso: "and provided that this provision shall not be construed to prohibit the interchange of passes for the officers and agents and employees of such carriers and their families."

The sections above referred to are almost exact copies of the act of congress of June 29, 1906. §8563 U. S. Comp. St. 1913, 34 Stat. at L., ch. 3591, p. 584. Section one of said act contains such a proviso, viz.: "Provided, that this provision shall not be construed to prohibit the interchange of passes for the officers, agents and employees of common carriers, and their families."

The Supreme Court of the United States in an opinion delivered by Justice Holmes, June 22, 1914, speaking of the foregoing provisions of the act above set out as relates to passes, uses this language: "The main question is whether when the statute permits the issue of a 'free pass' to its employees and their families it means what it says. The railroad was under no obligation to issue the pass. It may be doubtful whether it could have entered into one, for then the services would be the consideration for the duty and the pass and by §6 it was forbidden to charge 'a greater or less or different compensation' for transportation of passengers from that of its published rates. The antithesis in the statute is between the reasonable charges to be shown in its schedules and the free passes which it may issue only to those specified in the act. To most of those enumerated the free pass obviously would be gratuitous in the strictest sense, and when all that may receive

them are grouped in a single exception we think it plain that the statute contemplates the pass as gratuitous in the same sense as to all." *Charleston, etc., R. Co.* v. *Thompson* (1913), 234 U. S. 576, 34 Sup. Ct. 964, 58 L. Ed. 1476; *Morris* v. *West Jersey, etc., R. Co.* (1915), 87 N. J. Law 579, 94 Atl. 593.

The Appellate Court of this State, in an opinion of October 8, 1914, held that the relation of carrier and passenger could not, under the statutes above referred to, be created for any other consideration than that provided for in the statute, and that a contract previously entered into between a citizen landowner and a traction line, whereby a right of way was granted to the company in consideration of transportation to the grantor was void as being in conflict with the above quoted statutes of this state. *Evansville, etc., R. Co.* v. *Vanada* (1914), 57 Ind. App. 415, 106 N. E. 388.

It is practically conceded by the parties to this appeal that if the pass in question was a "free pass," or as the expression is frequently used, "a gratuity," then the stipulation as to releasing the company from liability in case of injury is valid and binding upon the parties and their representatives. It has been so held by this court and the courts of other states and of the United States. *Payne* v. *Terre Haute, etc., R. Co.* (1901), 157 Ind. 616, 619, 62 N. E. 472, 56 L. R. A. 472; *Northern Pacific R. Co.* v. *Adams* (1903), 192 U. S. 440, 453, 24 Sup. Ct. 408, 48 L. Ed. 513. It is conceded that the pass in question was issued by appellant to decedent in exchange for passes issued by the Marion, Bluffton and Eastern Traction Company to officers of the appellant. Under the rule stated in the authorities, *supra*, each of the passes would be "free" and that the relation of carrier and passenger for hire was not created and did not exist at the time of the accident in which appellee's decedent was killed, and

hence the stipulation as to assuming the risk for damages for injury to himself and property is binding upon decedent and his representatives, and no recovery could be had for causing his death unless done wilfully.

This brings us to the consideration of the ninth paragraph of complaint wherein it is alleged that appellant wilfully killed appellee's decedent. We are of the opinion that there is no evidence to support this paragraph of complaint. It is true the jury, in answer to interrogatories Nos. 35 and 36—as to whether the employes of appellant wilfully, purposely and intentionally killed decedent—answered, "Yes, by negligence". The answers to these interrogatories clearly nullify themselves. To say that the act complained of constitutes wilfulness, intention and purpose to do the act by reason of negligence, is saying that they did it wilfully and intentionally with a purpose to do it, without having any intention or will or purpose to do it, but by inattention, heedlessness, thoughtlessness — an absurdity. "Strictly speaking the terms negligence and wilfulness are incompatible. To say that an injury resulted from the negligence and wilful conduct of another is to affirm that the same act is the result of two opposite mental conditions, *heedlessness* and *purpose* of design." 29 Cyc 424; *Brooks* v. *Pittsburgh, etc., R. Co.* (1910), 158 Ind. 62, 70, 62 N. E. 694; *Cleveland, etc., R. Co.* v. *Miller* (1897), 149 Ind. 490, 510, 49 N. E. 445; *Parker* v. *Pennsylvania Co.* (1893), 134 Ind. 673, 677, 34 N. E. 504, 23 L. R. A. 552; *Louisville, etc., R. Co.* v. *Bryan* (1886), 107 Ind. 51, 54, 7 N. E. 807; *Pittsburgh, etc., R. Co.* v. *Ferrell* (1906), 39 Ind. App. 515, 519, 78 N. E. 988, 80 N. E. 425. In *Brooks* v. *Pittsburgh, etc., R. Co., supra,* the court uses the following language: " 'To constitute a wilful injury, the act which produced it must have been intentional, or must have been done under

such circumstances as evinced a reckless disregard for the safety of others, *and a willingness to inflict the injury complained of.* It involves conduct which is *quasi* criminal.' Even a more pertinent statement of the law upon this subject is found in *Parker* v. *Pennsylvania Co.* 134 Ind. 673, 679, 23 L. R. A. 552, where it is said: 'Wilfulness does not consist in negligence. On the contrary, as illustrated by the cases of Bryan and of Mann, heretofore cited, the two terms are incompatible. Negligence arises from inattention, thoughtlessness or heedlessness, while wilfulness cannot exist without purpose or design. No purpose or design can be said to exist where the injurious act results from negligence, and negligence cannot be of such a degree as to become wilfulness.' See, also, *Terre Haute, etc., R. Co.* v. *Graham,* 95 Ind. 286, 48 Am. Rep. 719, and *Cleveland, etc., R. Co.* v. *Miller,* 149 Ind. 490, for forceful statements of the law upon this subject."

The evidence in the case shows that the car on which decedent was riding when killed left Bluffton on the afternoon of September 21, 1910, with a large number of passengers aboard. At about the same time an "extra" left Fort Wayne for Bluffton. By some misunderstanding of orders given or some other inexplicable cause the two cars while rounding a curve at a woods just north of Kingsland came together and many passengers, including decedent, were killed and others seriously injured. The evidence in the cause shows beyond any doubt that somebody was guilty of gross negligence in the operation of the cars, and that the injury which caused the death of appellee's decedent was the result of carelessness on the part of some one or all of appellant's servants. Yet tested by the well-established rule that negligence cannot be of such a degree as to become wilfulness (*Brooks* v. *Pitts-*

*burgh, etc., R. Co., supra*), the evidence does not support the charge of wilful killing.

The questions arising on the giving of, and the refusing to give, instructions are determined by the construction given the pass in question, and hence what we have heretofore said in relation thereto disposes of the instructions.

Judgment reversed, with instructions to grant a new trial.

NOTE.—Reported in 115 N. E. 585. Carriers: (a) validity of a stipulation in a free pass exempting carrier from liability for negligence, 4 Ann. Cas. 557, 12 Ann. Cas. 584, Ann. Cas. 1915 C 623, 37 L. R. A. (N. S.) 235, 10 C. J. 874; (b) rights as passenger of persons having free transportation, 61 Am. St. 87. See under (2) 29 Cyc 424.