GRAND TRUNK WESTERN RAILROAD CO. *v.* BRIGGS.

[No. 16,827. Filed June 16, 1942. Rehearing denied October 21, 1942. Transfer denied November 30, 1942.]

*Parker, Crabill, Crumpacker, May, Carlisle & Beamer,* of South Bend, for appellant.

*J. J. McGarvey* and *Archie A. Koritz,* both of Valparaiso (*Ray A. Pillard,* of Valparaiso, of counsel), for appellee.

BLESSING, J.—This action was brought by appellee to recover damages occasioned by the death of her decedent, Frank Briggs, who met his death as a result of a collision of the automobile which he was driving and one of appellant's passenger trains at a highway crossing, known as Snedley's Crossing, about six miles west of Valparaiso, Indiana.

The complaint, which was in one paragraph, alleged negligence in failure to blow the whistle, failure to sound any bell, and the failure to give or sound any other warning within one mile of the crossing.

The complaint was answered by general denial and the issues thus formed were submitted to a jury for trial, which found for appellee, and returned a verdict in the sum of $6,875.00, and for which amount judgment was entered.

The appellant filed its motion for a new trial, which was overruled, and this ruling constitutes the only proper assignment of error. The specifications in said motion and not waived are:

1. The verdict of the jury is not sustained by sufficient evidence.

2. The verdict of the jury is contrary to law, and

3. Error of the court in overruling defendant's

motion for judgment on the answers to the interrogatories notwithstanding the general verdict.

The single question raised by these specifications is: Was appellee's decedent guilty of contributory negligence as a matter of law? Since some of the interrogatories propounded to the jury were improper under the holding of this court in the case of *Tucker Freight Lines, Inc.* v. *Gross* (1941), 109 Ind. App. 454, 33 N. E. (2d) 353, our answer to the above question is determined from a consideration of the other specifications above set out as grounds for a new trial.

The record discloses the following facts, concerning which there is no dispute: That the decedent was 41 years old, in good health and possessed of good hearing and eyesight; that he was employed in the mills at Gary, working at the time of the accident from 9 p. m. to 5 a. m.; that he was familiar with the crossing where the accident occurred, and had traveled over it from the north "dozens" of times; that the single track of appellant crosses the gravel road highway at the place of the accident at practically a right angle and slightly above the level of the highway; that west of the highway a short distance another main track, known as the east-bound main, terminated, and from this point east-bound trains switched to the west-bound or single main. At the time of the accident, which occurred on April 3, 1940, at approximately 5:45 a. m., an east-bound freight train, the engine of which was about 700 feet west of the highway crossing, was waiting for the west-bound passenger train, the one involved in the accident, to clear the switch, after which the freight was to proceed. The passenger train was 800 feet long, traveling at the rate of 60 miles per hour; the crossing whistle was given, starting at the whistling post and continued to within 550 feet of the

crossing. This signal was heard by witnesses who were 700 feet west of the crossing, and some of these witnesses saw the train approaching when it was more than a mile away. Appellee's decedent was driving a 1936 Dodge sedan in good condition with good brakes; he approached the crossing from the north and was traveling 20 miles per hour at the time of the collision, decedent's automobile striking the rear drive wheel on the right side of the engine, 44 feet back from the pilot. Appellant's right of way is 100 feet wide east of said highway crossing with the single track occupying the center thereof and the north right of way line 46½ feet north of the north rail. There were some open spaces north of the right of way line from which a train approaching from the east could be observed, but within the north line of the right of way and the north rail there was a clear and unobstructed view of the track to the east of the crossing for not less than one mile. It was a cloudy morning and there was a misty rain. The train was seen by one of plaintiff's witnesses when it was 125 rods east of him, and by all of the other witnesses testifying on this point at a greater distance.

Taking the evidence most favorable to appellee the engine bell did not ring and the undisputed evidence established the fact that the bell could be and was on other occasions heard for a distance of 500 feet. It also appears without contradiction that the noise of the approaching train was heard for a distance of not less than 125 rods. A metal warning sign was located 300 feet north of the crossing, and the usual cross-arm signal was located within the right of way on the east side of the highway. This we think is a fair narrative of the facts essential to the determination of the question here involved.

Certain rules and principles, relating to the duties devolving upon a person traveling on a public highway when approaching and entering upon a railroad crossing, with reference to his own safety, have become well established. One of these rules, long since established as the law of this State, is that railroad crossings are, in themselves, a warning of danger and all travelers approaching such crossings must exercise reasonable precaution for their own safety, and a failure to do so is a bar to recovery in the event of injury. *Mann* v. *Belt Railroad and Stockyard Company* (1891), 128 Ind. 138, 26 N. E. 819; *Pennsylvania Company* v. *Horton* (1892), 132 Ind. 189, 31 N. E. 45; *Engrer* v. *Ohio and Mississippi Railway Co.* (1895), 142 Ind. 618, 42 N. E. 217; *Cleveland, etc., R. N. Co.* v. *Miller, Admr.* (1898), 149 Ind. 490, 49 N. E. 445; *Cleveland, etc., R. W. Co.* v. *Houghland* (1909), 44 Ind. App. 73, 88 N. E. 623; *Waking* v. *Cincinnati, etc., R. Co.* (1920), 72 Ind. App. 401, 125 N. E. 799; *Guion* v. *Terre Haute, etc., Traction Co.* (1925), 82 Ind. App. 458, 143 N. E. 20.

Travelers on a public highway, in attempting to pass over railroad crossings, are required to look and listen for the approach of trains. *Waking* v. *Cincinnati, etc., R. Co.* (1920), 72 Ind. App. 401, 125 N. E. 799; *New York, etc., R. Co.* v. *Leopold, Admr.* (1920), 73 Ind. App. 309, 127 N. E. 298.

The traveler upon the highway who is about to enter upon a railroad crossing is not required in the exercise of reasonable care to look and listen at any precise point, but he is required in the exercise of such care to look and listen for the approach of trains where such acts will be reasonably effective. *Waking* v. *Cincinnati, etc., R. Co., supra; Pittsburgh, etc., R. Co.* v. *Dove* (1916), 184 Ind. 447, 111 N. E. 609;

*Baltimore & Ohio R. Co.* v. *Reyher, Admx.* (1940), 216 Ind. 545, 24 N. E. (2d) 284.

Failure of a train crew to give the statutory signals of the approach of railroad trains to public highway crossings does not relieve the traveler about to ■ pass over the railroad from the exercise of due care to discover the approach of trains. *Pennsylvania Company* v. *Horton* (1892), 132 Ind. 189, 31 N. E. 45; *Chicago and Erie Railroad Company* v. *Thomas, Admr.* (1897), 147 Ind. 35, 46 N. E. 73; *Morford* v. *Chicago, etc., R. Co.* (1902), 158 Ind. 494, 63 N. E. 857.

Another salutary and reasonable rule is that the driver of an automobile in approaching a railroad crossing of a public highway with which he is ■ familiar, and where the driver's view is obstructed, is required in the exercise of reasonable care to have his car under control, and to drive at such rate of speed that the car could be stopped, by the exercise of ordinary care, without going upon a crossing when an approaching train is so close as to constitute an imminent danger, and in this particular case, to avoid striking the side of the locomotive. In fact this obligation has been increased under certain conditions by legislative enactment. It is now provided by statute that whenever any person driving a vehicle approaches a railroad grade crossing, the driver shall stop within fifty feet but not less than ten feet from the nearest track of such railroad and shall not proceed until he can do so safely, when: (c) A railroad train approaching within 1,500 feet of the crossing emits a signal audible for such distance, and such train, by reason of its speed or nearness to such crossing, is an immediate hazard, or (d) An approaching train is

plainly visible and is in hazardous proximity to such crossing. § 47-2114, Burns' 1940 Replacement.

The undisputed evidence discloses that the warning signal emitted by blowing the whistle, was audible for the distance required by the statute, and the nearness of the train to the crossing constituted an immediate hazard. The evidence is also without dispute, and the jury so found by its answer to an interrogatory, that when appellee's decedent was at the north line of appellant's right of way, the approaching train was visible to the decedent had he looked. With the decedent traveling at the rate of 20 miles per hour and colliding with the engine at a point 44 feet back from the pilot, and the train traveling at the rate of 60 miles per hour establishes, without doubt, that the train was in "hazardous proximity" to the crossing. These facts compel the conclusion that the decedent was required to stop before going upon the crossing, and a failure to stop would constitute negligence on his part because the facts herein set out disclose that he could not cross in safety before the train cleared the intersection.

The testimony of the engineer on the passenger train, the only witness who testified on this point, was that decedent did not stop, and that he, the engineer, first saw decedent's automobile when it was more than fifty feet north of appellant's track. This testimony is supported by the circumstances surrounding the accident. This witness also testified that appellee's decedent was traveling at the rate of 50 miles per hour at the time of the collision, but the jury found by its answer to an interrogatory that decedent was traveling 20 miles per hour at the time of the collision. The only basis for this conclusion as shown by the record is a computation based on the distance traveled by appellee after he quit work and the time of the accident. But

the slower speed did not affect the decedent's duty to stop if the circumstances brought such obligation within the provisions of the statute.

If we were to assume that appellee's decedent did stop in compliance with the statute and under the circumstances, above set out, requiring him to stop, then he did not heed what he saw and heard, or could have seen and heard, if he had exercised the care of an ordinarily prudent person. He was not placed in a position of peril and his own conduct was responsible, at least in part, for his death.

The very basis of the doctrine of contributory negligence is the assumption that the negligence charged against the other party is admitted or established by proof. The failure to ring the bell was negligence, but negligence on the part of appellee's decedent proximately contributing to his death, reduced appellant's negligence, if a proximate cause, to a contributing cause likewise, and in which event appellee's recovery was barred.

Appellee makes the further contention that the decedent's attention may have been momentarily diverted, and that he was giving attention to a train that was standing 700 feet west of the crossing. It is true that decedent was not required to first look in a particular direction but if he stopped and exercised the care of a reasonably prudent person, he would have, under the uncontradicted evidence, discovered the approach of the train with which he collided. If he did not stop and was driving at such rate of speed that he could not stop after he reached a place where the caution required of him was reasonably effective, and in time to avoid the collision he was guilty of negligence.

We recognize that as a general rule contributory

negligence is a question of fact for the jury or the trial court as the case may be, and that the cases are rare where courts of appeal may declare · the plaintiff guilty of contributory negligence as a matter of law. But where, as in this case, the controlling facts are without dispute, and from which but one reasonable inference may be drawn by reasonable minds then it is not only the prerogative of appellate courts, but their duty to declare the law. Viewed from this standpoint, we are of the opinion that appellee's decedent, from the evidence in this record, was guilty of contributory negligence as a matter of law.

Judgment reversed with instructions to grant appellant a new trial and for further proceedings not inconsistent with this opinion.

NOTE.—Reported in 42 N. E. (2d) 367.