## MEASUREMENTS CORPORATION v. FERRIS INSTRUMENT CORPORATION.

### Civil Action No. 3010.

District Court, D. New Jersey.
Jan. 22, 1946.

McCarter, English & Egner and Ward James Herbert, all of Newark, N. J. (Ward, Crosby & Neal, Kenneth S. Neal, and S. M. Ward, Jr., all of New York City, of counsel), for plaintiff.

Joseph J. Corn, of Newark, N. J. (Darby & Darby, Samuel E. Darby, Jr., and Floyd H. Crews, all of New York City, of counsel), for defendant.

FAKE, District Judge.

This is a declaratory judgment proceeding in which plaintiff seeks to have the Ferris patent No. 2,265,637 (issued in 1941) declared invalid. The defendant answering, asserts the validity of the patent, and seeks affirmative relief by way of three counterclaims.

The validity of the patent is at the base of the issues involved and will therefore be dealt with at the outset. The patent relates to the art of measuring the characteristics of radio receivers, the object being to provide means for eliminating errors appearing when measurements were attempted by means other than those disclosed therein. The third claim of the patent is conceded to be sufficient to cover the problems to be considered here. It reads as follows:

"3. An arrangement for measuring the performance of a device designed to be operatively responsive to electrical alternating current potentials over an extremely wide range of superaudible frequencies comprising means for creating suitable potential producing alternating currents changeable in frequency to correspond to the frequencies needed for measuring, a double conductor cable of minimum permissible length selected to have minimums of distributed inherent inductance and capacitance between its associated conductors connected as output means for the said alternating current potential producing means terminated by a cross-connected resistance element which is as free from inherent reactive characteristics as its physical construction will permit, and which has an impedance substantially equal to the characteristic impedance of said cable, and means for connecting the responsive elements of a device under measurement across difference of potential points of the said terminating resistance."

It is conceded that the patent consists of an assemblage of functioning parts or elements which were well known and old in the art. The defendant goes further however and contends that the assemblage is new and produces a new and novel result. It is here that plaintiff joins issue.

In practice, the device is used to test and measure the accuracy of radio receiving sets in the ultra high frequency range. There is first provided a source of oscillations coupled with a voltage reducer (attenuator). This is so constructed as to simulate any of the radio frequencies which issue from broadcasting stations. A transmission line extends from the source of oscillations providing two output terminals for annexation to the receiving set to be tested. This transmission line is of the order of three feet and is a cable so constructed as to provide minimums of distributed inherent inductance and capacitance; but even when so minimized these distorting elements would find their way into such transmission line and to such an extent as to prevent the true transmission of the radio frequencies emanating from the source above mentioned. This, defendant contends, was the state of the art when

Ferris inserted a terminating resistance element near the output terminal of the line and thereafter the simulated signals or radio waves reached the receivers without distortion.

In view of the prior art, the gist of the patent would seem to reside in the use of a terminating resistance element attached near the output end of the line or cable which terminating resistance has an impedance substantially equal to the characteristic impedance of the line or cable, thus permitting the frequencies which emanate from the source to enter the receiving set without distortion.

Considering the several functioning parts, each of which was old in the art, I conclude that they respectively function in the assemblage in like manner as they functioned before being so united. It does appear however that the combination of these elements results in the transmission of frequencies without distortion into the receiving sets to be tested.

Does this amount to patentable invention? Has it been covered by prior disclosures? Does it fall within the sphere of the mere skill of the art?

Some five years before the issuance of the patent in suit, one Hopkins obtained a patent No. 2,006,994 relating "to radio frequency distribution systems, and more particularly to a radio frequency distribution system of the type wherein radio broadcast signals are distributed to a plurality of independent receivers." Reference to the diagram accompanying this patent discloses a terminating resistor Fig. 14, and in the specifications the inventor says: "The value of the resistor 14 should be equal to the impedance of the line." Thus we find that Hopkins devised a frequency distribution system using a terminating resistance to correct the impedance occurring on a transmission line. While the Ferris patent in suit deals with and is intended to apply to the testing or measurement of receiving sets, this rises no higher than to say that Ferris is concerned with a somewhat different use in the same art with Hopkins; and the principle involved is the same, to wit, the prevention of distortion in the line. In the patent of Hopkins it is done to permit the hook-up of a number of receivers on one line, while in the Ferris patent it is done to permit measurements.

In answer to the question: "Was Hopkins' terminating resistance similar or different from Ferris' in respect to the purpose for which it was designed?" plaintiff's expert, Prof. William C. Ballard, answered at the trial: "The same; exactly the same." I find myself in full accord with this answer and therefore find that Hopkins to that extent at least anticipated Ferris.

An article entitled "The Measurement of High-Surge Voltages" by P. L. Bellaschi was published in The Transactions of The American Institute of Electrical Engineers in June 1933 which it is urged constitutes a prior disclosure. The article deals with measurements applied to high-surge voltages such as are found in lightning and teaches the use of a terminating resistance element in connection with a source of oscillations, resistance of potentiometer, cable surge impedance and a terminal resistance element to evaluate or make measurements by means of an oscillograph. In this connection Prof. Ballard testified as follows:

"The Court: Well, then, do I understand from this article and the diagram that we are considering from the article, that the portion of it which is marked 'Terminal Resistance $(R^T=Z)$,' * * * is to some extent, if not entirely, the equivalent of what is marked at figure 1 as 'Terminating Resistance,' in Exhibit P–9?

"The Witness: Your Honor, I think that it is entirely the equivalent of it. * * * My position is that it is entirely the equivalent of it, and put there for the same purpose."

I therefore conclude that the Bellaschi article evidences a full disclosure prior to Ferris.

Aside from Hopkins and Bellaschi it is my view that the Ferris patent is invalid for want of patentable invention. It seems to me that the Ferris patent constitutes a mere aggregation of elements each old and each functioning in their well known orbits of influence on the result attained. Here there was no long period of demand preceding Ferris, such as was found in Goodyear Tire & Rubber Co. v. Ray-O-Vac Co., 321 U.S. 275, 64 S.Ct. 593, 88 L.Ed. 721; and the instant case falls within the same class as Electric Cable Joint Co. v. Brooklyn Edison Co., 292 U.S. 69, 79, 54 S.Ct. 586, 589, 78 L.Ed. 1131, wherein it is held: "The fact that the com-

bination, without it, was old, does not preclude invention by the addition of a new and useful element. Parks v. Booth, 102 U.S. 96, 104, 26 L.Ed. 54. But the addition must be the result of invention, not the mere exercise of the skill of the calling and not one plainly indicated by the prior art." Here the use of the terminating resistance element is like the oil reservoir in the Electric Cable Joint Co. case which was held to be a mere exercise of skill. Ferris did not step outside of the skill of the art by the insertion of the terminating resistance nor did he do so in combining the other elements covered by his claim.

I conclude that the Ferris patent in suit is invalid.

The counterclaims are dismissed for the reasons set forth in the findings of fact and conclusions of law filed herewith.