MEASUREMENTS CORPORATION v. FERRIS INSTRUMENT CORPORATION.

No. 9136.

Circuit Court of Appeals, Third Circuit.

Argued Oct. 15, 1946.

Decided Feb. 18, 1947.

Samuel E. Darby, Jr., of New York City (Floyd H. Crews and Darby & Darby, all of New York City, and Joseph J. Corn, of Newark, N. J., on the brief), for appellant.

Kenneth S. Neal, of New York City (McCarter, English & Studer and James R. E. Ozias, all of Newark, N. J., on the brief), for appellee.

Before ALBERT LEE STEPHENS, GOODRICH and KALODNER, Circuit Judges.

KALODNER, Circuit Judge.

This is a patent controversy. Appellee, Measurements Corporation, instituted action for a declaratory judgment seeking a declaration of invalidity and non-infringement of Patent No. 2,265,637, known herein as the Ferris patent. Appellant, Ferris Instrument Corporation, assignee of the Ferris patent, presented in its answer three counterclaims requesting (1) specific performance of a contract between Measurements Corporation and itself wherein the former allegedly agreed not to infringe the Ferris patent; (2) appropriate relief because of the alleged infringement of the Ferris patent; and (3) transfer to itself of legal title to Patent No. 2,286,029, called the Van Beuren patent, of which Measurements Corporation is assignee, together with appropriate relief for infringement of that patent.

The court below found the Ferris patent invalid and dismissed the counterclaims. 64 F.Supp. 80. This appeal followed.

I. The Ferris patent is designated as a "high frequency measuring device and method." Simply stated, it is a device intended for use in testing the operating condition, for example, of high frequency radio receiving sets.

The device consists of a signal generator which may be likened to a tiny broadcasting station. The generator produces an artificial signal which, on proper adjustment, may be substituted for the signal of any particular sending station transmitting through the air. A cable, or transmission line, connects the signal generator to the instrument under observation.

No difficulty with this apparatus was experienced in the art where low frequencies were involved. However, at high frequency levels results were rendered unsatisfactory because the transmission line introduced undesired distortions or aberrations caused by reflected voltage, that is, the voltage entering the transmission line at the input end, where the signal generator was attached, was not uniform along the line, but "bounced back" as it were. Consequently, it was impossible to determine whether the voltage existing at the output end of the line would be the same as the voltage existing at the input end.

The invention covered by the Ferris patent relates to the elimination of these errors or aberrations by application of the principle of the "terminated transmission line." The transmission line, being a line with substantially uniformly distributed capacitance and inductance, was terminated by Ferris in a resistance element having an impedance substantially equal to the characteristic impedance of the transmission line. In this manner the reflections along the transmission line were eliminated and the voltage at the output end, or at various points along the line, substantially equalled the voltage at the input end. The resistance element, the Ferris patent teaches, is attached at the output end of the transmission line connecting the two electrical conductors which constitute the transmission line, and is selected so that its electrical resistance or impedance is substantially equal to the characteristic impedance of the transmission line.

It is conceded that the signal generator and the "terminated transmission line" were well known in the art prior to the filing of the application for the Ferris patent. Moreover, no invention of the resistance element is claimed. In substance, then, the claimed invention is the application of old and known devices to accomplish a new result, here, a "high frequency measuring apparatus and method."

■ Although the question of infringement of the Ferris patent was raised, the learned trial judge properly addressed himself to the paramount issue of validity. Sinclair & Carroll Co., Inc., v. Interchemical Corp., 1945, 325 U.S. 327, 330, 65 S.Ct. 1143, 89 L.Ed. 1644. The conclusion of the invalidity of the Ferris patent was predicated on the findings of (1) anticipation by Hopkins Patent No. 2,006,994, (2) full disclosure by P. L. Bellaschi in an article published in June, 1933, and (3) want of patentable invention.

■ Examination of the record constrains affirmance of the invalidity of the Ferris patent. It is sufficient to observe that Ferris applied an old and known remedy in the usual way to overcome a known difficulty. Cf. Sinclair & Carroll Co., Inc., v. Interchemical Corp., supra. Terminal resistance was used by both Hopkins and Bellaschi to avoid voltage distortions along a transmission line. Ferris used it in the same way for the same purpose.

Bellaschi, instead of a signal generator producing a single high frequency, showed a generator capable of producing a multiplicity of frequencies, including high frequencies, at one time. His generator, which corresponded in a large degree to Ferris', was connected to an oscillograph, a measuring device, by a "terminated transmission line." Bellaschi expressly recognized that the terminating resistance was necessary to avoid reflections along the line.

Appellant stresses that Bellaschi's device involved many high frequencies at one time and greater voltage than Ferris contemplated, and that Bellaschi was measuring the product of the device at the input end of the line. With respect to the former objections, Ferris' device was also capable of carrying any high frequency signal and, further, the "terminated transmission line" would work as well for any amount of voltage. As to the latter objection, it may be noted that the Ferris device worked in somewhat opposite fashion to Bellaschi's. Ferris produced a known signal to measure the accuracy of the instrument at the output end of the line. Bellaschi attached to the output end an instrument which he already knew was accurate, thus measuring the product of his generator. Ferris' device was capable of use with an oscillograph, as, indeed, one of appellant's exhibits shows. Although, as appellant contends, the two devices are for different purposes, the similarities are such as to support the conclusion, if not to make it ineluctable, that Bellaschi's article, disclosing his use and purpose of the "terminated transmission line", would suggest to one skilled in the art the solution to the problem of Ferris' patent, which, in truth, Ferris solved in the same way.

The use, therefore, by Ferris of the "terminated transmission line", in our opinion, did not involve invention. Hazeltine Corp. v. General Motors Corp., 3 Cir., 1942, 131 F.2d 34, 39. Appellant stresses the long felt need in the art, but the evidence on this point does not justify upsetting the finding to the contrary by the court below. See Cusano v. Kotler, 3 Cir., 159 F.2d 159. Because of the view taken, it becomes unnecessary to develop in detail the contentions with respect to anticipation and prior disclosure.

■ II. By way of counterclaim, appellant interjects an agreement between Measurements, itself, and others not parties hereto. Under this agreement, dated April 14, 1940, appellant granted to Measurements a license for a term of two years to manufacture, sell and lease signal generators incorporating the Ferris claim.[1] Specifically, no rights or interests of any kind in patents, discoveries or inventions of Ferris were granted, transferred or shared with Measurements except as other-

---

[1] Application for the Ferris patent was filed May 17, 1937. On September 24, 1938, final rejection was entered by the Patent Office, and on May 24, 1939, the application became abandoned by reason of failure to appeal. On January 2, 1940, a petition to revive the abandoned application was filed, but this was denied on March 11, 1940. A petition for reconsideration was filed on April 10, 1940, and was granted on June 25, 1940. On April 30, 1941, the Board of Appeals reversed the rejection allowing the Ferris patent, which issued December 9, 1941.

wise provided in the agreement.[2] Specific performance of the agreement was requested.

It is now asserted that Measurements impliedly agreed that, on the expiration of the two year license it would discontinue, in the signal generators it made, the use of the "terminated transmission line" feature *if Ferris secured a patent therefor.* We do not stop to examine the agreement to find such a promise for obviously the alleged implication simply amounts to a statement of the fundamental principles of patent law which, without the necessity of contract, afford that kind of protection to the licensor. A license having spent its force, the licensee becomes a stranger, so to speak, to the patent, limited by a stranger's rights and responsibilities. 2 Walker on Patents (Deller's Ed. 1937) Sec. 391. Thus, at the end of the two year term, Measurements could not, without opening itself to infringement proceedings, use any feature for which Ferris held a patent. The express denial in the contract of any right or interest in Measurements, other than the license, is merely emphatic. Of course, in such proceedings Measurements would be free to question the validity of the patent. 2 Walker on Patents (Deller's Ed. 1937) Sec. 391. Indeed, appellant disavows any claim that Measurements is estopped to contest the validity of the patent in this proceeding.[3]

In view of the holding that the Ferris invention is unpatentable, and the patent therefor invalid, there remains nothing for specific performance.

To the contrary, appellant insists that validity of the Ferris patent is irrelevant to its request for specific performance. Its theory is, the agreement implied and the parties intended that Measurements would not manufacture after the expiration of the license if Ferris secured a patent *regardless of the validity of the patent.* This, we think, goes too far. The contract, insofar as we are concerned here, grants Measurements a two year license and except to the extent that *patentable* inventions were or would be covered by lawfully issued patents, Measurements is released of other claims. Nothing in the agreement prohibits Measurements from manufacturing after the license expired where no patent exists, and concededly, there is nothing to forestall Measurements from contesting the validity of the patent after the license expired. The crux of appellant's argument, therefore, is that once it obtained letters patent, Measurements could not manufacture for the life of the patent. The language of the contract evinces no room for such implied intention. Moreover, there is no suggestion that the letters patent were agreed or intended to be final. In essence, appellant denies to Measurements the otherwise conceded right to question validity. But an agreement not to contest validity will not be so readily implied. Cf. Eskimo Pie Corp. v. National Ice Cream Co., 6 Cir., 1928, 26 F.2d 901, 902.

III. In its third counterclaim, appellant sought to procure the assignment to itself of Patent No. 2,286,029 (Van

---

[2] The agreement provides, in addition to the two year license:

"2. It is agreed that by virtue of the license * * * no rights or interests of any kind in any patents, discoveries or inventions of (Ferris Instrument Corp.) are being granted or transferred to or shared with (Measurements), except as expressed in this agreement. Subject to the royalty payments * * * and except to the extent that patentable inventions or discoveries have been or may be covered by lawfully issued patents, (Ferris Instrument Corp.) severally and jointly releases (Measurements) from all claims and causes of action * * * past and future, which have

arisen or may arise * * * out of the alleged use by (Measurements) of any alleged trade secrets, confidential information, inventions or discoveries, to which (Ferris Instrument Corp.) has claimed or may claim any legal right, provided, however, that (Measurements) shall not, within two years from the date hereof, manufacture any attenuator system or part thereof, which constitutes a duplicate in physical design of those now in use by (Ferris Instrument Corp.) * * * *"

[3] Measurements instituted the instant action on July 22, 1943, more than a year subsequent to the expiration of the license.

Beuren patent), which was issued to Measurements as assignee of Van Beuren, the inventor. Injunctive relief and an accounting were requested incident to the infringement of this patent. The court below dismissed this counterclaim on its merits, and denied relief, concluding that the evidence was insufficient to establish either that Van Beuren was under any obligation to assign his invention to the appellant, or that he conceived or invented any attenuator while employed by the appellant.

It plainly appears that the principal issue raised by this counterclaim is that of title to the Van Beuren patent. Infringement relief is secondary and is entirely dependent upon title first being established in the appellant.

Of paramount significance is the fact that both parties involved are corporations existing under the laws of the State of New Jersey. Consequently, jurisdiction must be maintained on the theory that the action arises under the patent laws. In similar controversies arising in the Sixth and Seventh Circuits, it was recently held that jurisdiction to determine title, when that is the primary issue, does not exist in the federal courts. Dill Mfg. Co. v. Goff, 6 Cir., 1942, 125 F.2d 676, certiorari denied 317 U.S. 672, 63 S.Ct. 77, 87 L.Ed. 540; Laning v. National Ribbon & Carbon Paper Mfg. Co., 7 Cir., 1942, 125 F. 2d 565. For the thoroughly considered reasons given in these decisions, we agree.[4] Wilson v. Sandford, 1850, 10 How. 99, 51 U.S. 99, 13 L.Ed. 344; Luckett v. Delpark, Inc., 1926, 270 U.S. 496, 46 S.Ct. 397, 70 L.Ed. 703; Lion Mfg. Corp. v. Chicago Flexible Shaft Co., 7 Cir., 1939, 106 F.2d 930.

Finally, we do not subscribe to the contention that this counterclaim is a compulsory counterclaim within Rule 13(a), Federal Rules of Civil Procedure, 28 U.S. C.A. following Section 723c. Appellee's claim put in issue the validity of the Ferris patent and appellant's charge of infringement thereof. The Van Beuren patent, while affecting signal generators, is wholly different from the Ferris patent, and appellant's counterclaim concededly is based upon the alleged obligation of Van Beuren, because of his association with the appellant, 'to assign his invention—by no means the same transaction or occurrence involved in appellee's bill.

Accordingly, the order of the district court is modified with directions to dismiss for lack of jurisdiction appellant's counterclaim relating to the Van Beuren patent. The remainder of the order is affirmed.

———◇———

---

[4] Also, United States Fire Protection Co. v. Monocel, Inc., D.C.N.J.1943, 53 F. Supp. 989; but see Vanadium-Alloys Steel Co. v. McKenna, W.D.D.C.Pa.1939, 27 F.Supp. 535.