**PRINGLE v. GULF, M. & O. R. CO.**

No. 10899.

United States Court of Appeals
Seventh Circuit.

May 11, 1954.

Rehearing Denied June 7, 1954.

---

**1.** 64 Stat. 109 (1950), 50 U.S.C.A. § 552 (11).

**2.** Transcript of Record, p. 166.

**3.** Ibid.

Eugene R. Johnson, David A. Nicoll, Peoria, Ill., Louis F. Gillespie, Frederick H. Stone, Springfield, Ill., Miller, Westervelt, Johnson & Thomason, Peoria, Ill., Gillespie, Burke & Gillespie, Springfield, Illinois, of counsel, for appellant.

Wallace J. Black, Kenneth W. Black, Glen L. Borden, Peoria, Ill., Black, Black & Borden, Peoria, Ill., for appellee.

Before FINNEGAN, LINDLEY and SWAIM, Circuit Judges.

FINNEGAN, Circuit Judge.

A jury's verdict of $7,500 in plaintiff-administrator's action to recover damages for death allegedly caused by defendant-railroad's negligent operation of its freight train, underlies the final judgment brought here on appeal. The railroad urges contributory negligence, as a matter of law, by plaintiff's decedent as demonstrative of errors committed below in denying its motion for a directed verdict; to set aside that judgment; for a judgment notwithstanding the verdict; and for a new trial. Additional errors relied on by the railroad stem from denial of its several motions for a directed verdict grounded on plaintiff's asserted failure to sustain the requisite burden of proof on defendant's alleged negligence. This attack on the judgment is implemented by a contention that the verdict and judgment are contrary to the manifest weight of the evidence.

Plaintiff, on the other hand, argues that on the evidence embodied in this record, contributory negligence and extra-hazardous of this railroad crossing accident site, presented questions of fact for the jury and consequently would insulate their findings against a reversal.

Facts pertinent to this opinion follow. When the collision occurred at about 9:15 A.M., October 7, 1950, Andrew F. Pringle (administrator's decedent) was operating his 1942 Chevrolet coupe, westerly on Illinois State Route 17 to its intersection with the north and south track of the railroad approximately one half mile south of Varna, Marshall County, Illinois. Howard D. Pringle, then sitting on the front seat of that vehicle with his brother Andrew, was able to give eye-witness testimony at the trial below as plaintiff's sole occurrence witness.

Howard had spent all of his life in Marshall County and had traversed this particular crossing "a couple of hundred times." He "believed" that Andrew was familiar with it. Howard and Andrew were returning from Toluca, Illinois, when this episode occurred. They had traveled to Toluca to have the steering wheel on the Chevrolet straightened, but that work was not done. Since mechanical work had been previously performed on Andrew's car at this same garage in Toluca, Andrew had been over this particular crossing before.

At a point some 800–900 feet from defendant's crossing, the Pringle car was moving in the right-hand lane of traffic at a rate of 45–50 miles per hour, on a wet pavement. It had been raining and was cloudy, partly hazy—just drizzling rain. All windows of the Chevrolet were rolled up, side vent windows were open. The windshield wipers were on. Howard stated that the brakes on the Pringle vehicle, with a mileage of probably 150,000 were in excellent condition, but it was not a new car; it was about eight years old and had body rattles.

Howard testified that they passed several signs enroute to defendant's crossing; a junction sign, i. e. "Slow-Junction," another railroad sign with black crossbars on it and a big cross-buck, cross-arm sign bearing the words "Railroad Crossing."

As the Pringle vehicle traveled westerly toward this crossing, defendant's diesel and 14 cars were approaching it from a southerly direction. Plaintiff relies on the following nine items as establishing proof of obstructions in the southeast corner of the intersection between the Pringles and defendant's locomotive and cars: (1) A substation belonging to the Public Service Company of Northern Illinois, consisting of iron structure and transformer units, (2) A steel fence surrounding the substation, (3) A thick growth of bridal wreath 10 to 12 feet tall growing all around the outside of said fence, (4) A sign 10 feet high and 12 feet long located west of the substation, (5) A thick growth of bridal wreath 12 feet high in front of said sign, (6) A corn field that came right up to the right of way of the railroad, (7) Many electric power and telephone poles 18 inches through and going both south and east from the intersection, (8) Ground much higher than the surface of the road or the surface of the tracks, (9) Weeds on the right of way three to four feet tall.

"Both" Andrew and Howard were looking both ways and listening, but as Howard testified, they could see nothing to their left (south) because of the alleged obstructions hereinbefore itemized.

Howard relates that the Pringle car was slowing down as it neared defendant's crossing and was "probably going" 28–30 miles per hour just before the collision. On the other hand Howard testified that he first saw the defendant's "train" and heard its whistle, from the Pringle car, when it (the Chevrolet) was about 60 feet from the crossing involved here and defendant's train was then 60 feet south of the crossing. At this time and place he said, "Look Out" and his brother, Andrew, put on the brakes. Under cross-examination Howard stated that his brother applied the brakes at a point 30–35 feet east of this crossing, but the tires did not screech and their vehicle never stopped prior to its contact with defendant's diesel engine. Howard recalled, on further cross-examination, a car proceeding in the same direction as the Pringle vehicle was traveling; that that other car stopped at the side, off the traveled part of the road.

Even if we accepted plaintiff's version of the evidence described on page 3 of his brief, viz.:

"As the car driven by the Plaintiff's intestate, Andrew F. Pringle, approached the crossing from the west, because of these obstructions there was no view to the south until his car was 80 to 90 feet from the crossing. When the front of his car was 60 feet from the east rail, he only could see 65 to 75 feet down the track to the south. Not until he was 20 to 25 feet from the crossing could he see a quarter of a mile down the track to the south."

we could not approve the trial judge's refusal to sustain defendant's motions.

Howard had no trouble seeing ahead or to the side. He testified that when they collided with the engine it was "sitting right on the crossing," about half of the engine had gone across the crossing. The Pringle car ran into the side of the engine.

Considering plaintiff's evidence in the light most favorable to him we think reasonable men would not differ as to inferences to be drawn from all his evidence. These two young men, Andrew, 19 and Howard 25, were familiar with the terrain and location of that crossing. That this was generally open country can be readily established from photographs sponsored by plaintiff. Plaintiff's theory would make it appear that defendant's diesel locomotive and 14 cars, each 45 feet long, furtively approached the crossing with Route 17 at about 9:15 o'clock

in the morning, and ambushed the Pringle brothers.

■ One of our more recent opinions treating with contributory negligence is Spikings v. Wabash R. Co., 7 Cir., 1953, 201 F.2d 492, 497, where we approved a prior enunciation of the Illinois rule [1] by Judge Kerner. Andrew Pringle's administrator, as plaintiff here, had the burden of proving his decedent's freedom from contributory negligence and in this he failed. Soule v. Chicago & N. W. Ry. Co., 7 Cir., 1949, 175 F.2d 424.

Plaintiff's thesis in this appeal is simply that Andrew was looking, but this was an extra-hazardous crossing and decedent could not see because of those obstructions hereinbefore itemized. But we think, from even Howard Pringle's testimony, alone, Andrew's conduct showed such an undue risk of harm that it constituted contributory negligence as a matter of law and the issues should have been withdrawn from the triers of fact.

When we are confronted with cases tragic as the one before us there is, naturally, a temptation to palliate the rigor of the foregoing burden of proof. Yet this is Illinois law and we apply it to the facts traced upon the record before us.

Despite a full consideration of all points urged by plaintiff including among all of them, those grounded on an assertion that the site of this fatal accident was an extra-hazardous crossing; as well as those stemming from alleged violations of Illinois statutes concerning weeds and brush, we find them unavailing in the face of this record. It was error for the trial court to deny defendant's motion for judgment notwithstanding the verdict.

The judgment below is reversed and this cause remanded to the District Court with directions to sustain defendant's aforesaid motion.

Reversed and remanded.

[1]. See Green, Illinois Negligence Law II, Contributory Negligence, 39 Ill.L.Rev. 116, 125 (1944); a recent comment in 1954 Wis.L.Rev. 95, 104, 106, captioned Contributory Negligence in Five Midwestern States—Some Barriers for Plaintiff to Hurdle In Auto Accident Cases, contains a collection of cases on this proposition.