Frederick H. McNAUGHTON,
Plaintiff-Appellee,

v.

The NEW YORK CENTRAL RAILROAD COMPANY, Defendant-Appellant.

No. 11214.

United States Court of Appeals,
Seventh Circuit.

March 8, 1955.

Rehearing Denied April 11, 1955.

---

Marvin A. Jersild, Chicago, Ill., Joseph J. Daniels, Karl J. Stipher, Byron P. Hollett, Indianapolis, Ind., Baker & Daniels, Indianapolis, Ind., of counsel, for appellant.

James J. Stewart, Elbert R. Gilliom, Richard L. Gilliom, Indianapolis, Ind., Murray, Mannon, Fairchild & Stewart and Gilliom, Armstrong & Gilliom, Indianapolis, Ind., of counsel, for appellee.

Before DUFFY, Chief Judge, and LINDLEY and SCHNACKENBERG, Circuit Judges.

LINDLEY, Circuit Judge.

Plaintiff sued to recover damages for personal injuries incurred in a collision between a passenger train operated by defendant and a tractor-trailer which he was driving, as employee of Ellis Trucking Company, Inc., hereinafter referred to as Ellis or plaintiff's employer. Defendant counterclaimed for the damage to its locomotive in the same collision. A jury found for plaintiff on both complaint and counter-claim. Defendant appeals from the judgment entered on the verdict and assigns error upon the action of the District Court in denying its motions for a directed verdict and for judgment notwithstanding the verdict, which were based on its contention that plaintiff was guilty of contributory negligence as a matter of law.

The essential evidence, viewed most favorably to plaintiff, follows. The accident occurred at a crossing within the city limits of Anderson, Indiana, where defendant's main line, extending in a general southwesterly and northeasterly direction, intersects an east-west street known as West 25th. A second street, Arrow Avenue, runs north and south and dead-ends into 25th a short distance west of the crossing, with a cut-off for east bound traffic from Arrow crossing defendant's tracks to intersect with 25th, just east of the crossing, thus forming a Y highway intersection. The crossing on West 25th lies west of the center of the fork of the Y formed by the approaches from Arrow. The crossing was guarded by warning signals, topped with the usual "railroad crossing" sign, so arranged that one or more of the alternately flashing red lights faced in each direction, east and west, on 25th and each approach of the Arrow Avenue lanes.

In his trips between Detroit and Indianapolis, plaintiff had passed over this highway many times. On the morning of April 26, 1950, about 6 A.M., he approached the railroad from the east on 25th Street, traveling at approximately 20 miles per hour, but reducing to 15 when he was about 80 feet east of the crossing. At the same time defendant's passenger train, composed of two locomotives and thirteen baggage and passenger cars, came from the northeast, traveling in a southwesterly direction and was the first to reach the crossing. Plaintiff's vehicle ran into the east side of the first diesel unit, about 12 feet back of the front thereof.

Plaintiff and two other witnesses testified that the signals were not operating prior to the collision and that they heard no whistle or bell. They estimated the speed of the train at from forty to forty-five miles per hour at the time of the accident, and plaintiff introduced in evi-

dence the speed tape of the locomotive, which indicated that it was running at least forty-two miles per hour. Apparently, the engineer did not see plaintiff's vehicle and had no knowledge of its presence before he felt the thud of the impact.

Near the crossing were certain obstructions. Thus, the view to the southwest was obscured by certain factory buildings located about 80 feet east of the tracks. Just to the north of 25th was a parking lot. Several trees dotted the landscape and some shrubbery had grown on the east side of defendant's right-of-way. This is the area with which we are principally concerned, since the train approached from a northeasterly direction on plaintiff's right as he neared the crossing. Plaintiff testified that, as he approached the crossing, he looked to his right, down the railroad right-of-way, from three different points, but did not see any approaching train, and that he first saw the train when he was about fifteen feet from the crossing, after he had looked to the left and ascertained that the right-of-way was clear in that direction.

Defendant invites our attention to several photographs taken by cameras located on 25th Street at the points where plaintiff said he had looked, namely 250, 180 to 200 and 100–110 feet east of the crossing, each of which reproduces an image of the view, as one looks northeastward, up defendant's right-of-way. They tend to show that, at the respective points, the right-of-way was clearly visible, except for the trees and shrubbery previously mentioned, for distances ranging from 450 to 950 feet northeast of the crossing. Of the four photographs, two were introduced by plaintiff, who also admitted that a third, taken on the day the accident occurred, represents a true and correct view of the right-of-way from the 250 foot point.

Defendant's motions for a directed verdict and for judgment notwithstanding the verdict were grounded on the postulate that even though plaintiff looked at the points where he testified he had done so, he was contributorily negli-

gent as a matter of law, in failing to see the approaching train. Defendant insists here, as it did in the trial court, that the photographs, viewed in the light of the fact of the collision, and plaintiff's testimony as to his speed and that of the train, demonstrate that at each point where plaintiff says he looked, the oncoming train would have been clearly visible and that, even at 250 feet east of the crossing, considering plaintiff's speed of 20 miles and that of the train of over 40, inasmuch as each reached the intersection at approximately the same time, the train would have been only 500 to 600 feet northeast of the crossing, at a place which the photograph taken from the 250-foot position shows to have been clearly visible to one in plaintiff's position. A like argument is made with reference to the view at each point at which plaintiff says he looked.

■■ Since our jurisdiction in this cause rests on diversity of citizenship, the substantive law of Indiana controls. Erie R. R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188. It is well settled in that state that the question of contributory negligence is for the jury, except where the evidence is undisputed and the only reasonable inference is that the conduct involved constitutes contributory negligence. Pearson v. Baltimore & Ohio R. R. Co., 7 Cir., 200 F.2d 569, 572; Dommer v. Pennsylvania R. R. Co., 7 Cir., 156 F.2d 716, 718; New York Central R. R. Co. v. Milhiser, 231 Ind. 180, 190, 106 N.E.2d 453, 458–459, 108 N.E.2d 57; Baltimore & Ohio R. R. Co. v. Reyher, 216 Ind. 545, 552, 24 N.E.2d 284, 286; Lake Erie & Western R. R. Co. v. McFarren, 188 Ind. 113, 117–118, 122 N.E. 330; Kettner v. Jay, 107 Ind.App. 643, 645, 26 N.E.2d 546, 547.

However, no case principally relied on by either party is closely in point. Thus the law of Illinois controlled our decision in Pringle v. Gulf, Mobile & Ohio R. R. Co., 212 F.2d 632, on which defendant relies. Furthermore, that case is distinguishable on its facts. Pringle approached a crossing in open country, guarded by neither gates nor electrical

warning devices, at a relatively high rate of speed, while traveling on a wet pavement on a dark and cloudy day, in apparent disregard of several crossing warning signs. And Chesapeake & Ohio Ry. Co. v. Williams, 114 Ind.App. 160, 51 N.E.2d 384, had to do with a collision at an unguarded crossing. There, on plaintiff's testimony, which indicated that he had not looked for trains until he had reached a point at which looking was futile, despite the fact that he had a clear view of the railroad right-of-way, at a point more than 100 feet from the crossing, the court held that he was guilty of contributory negligence as a matter of law.

Plaintiff relies largely on Baltimore & Ohio R. R. Co. v. Reyher, 216 Ind. 545, 24 N.E.2d 284, New York Central Ry. Co. v. Milhiser, 231 Ind. 180, 106 N.E.2d 453, 108 N.E.2d 57, and Pearson v. Baltimore & Ohio R. R. Co., 7 Cir., 200 F.2d 569. The circumstances surrounding the collision in each of these cases were such that the plaintiff's view of the defendant's tracks was largely obscured either by the proximity of buildings to the railroad-right-of-way (Pearson), or by a snowstorm or snow kicked up by the excessive speed of the train (Milhiser and Reyher).

The two cases most closely in point are Lake Erie & Western R. R. Co. v. McFarren, 188 Ind. 113, 122 N.E. 330, and Pennsylvania R. R. Co. v. Boyd, 98 Ind. App. 439, 185 N.E. 160, 162. In the latter, it appears that the collision occurred about 6 A.M. on a spring day; that the train was exceeding the limit established by an ordinance; that a warning bell was not working; that plaintiff looked both ways but failed to see the train; and that there was "some obstruction to the appellee's view in the direction from which the train came." Upon this evidence, the court held that the question was properly submitted to the jury. So, too, in McFarren, there was evidence that a warning gong was not ringing; that plaintiff looked, but did not see a train; that his truck was struck by a switch engine, as it entered the crossing, and that the engine was being operated at a speed exceeding the limit fixed by ordinance. The court again held the question of contributory negligence one for the jury, saying that the highway traveler is entitled to presume from the silent bell that the crossing is safe and that the railroad " 'cannot relieve itself from liability simply because the traveler *neglected* to look or listen for himself.' [Pennsylvania Co. v. Stegemeier, Adm'r (1889), 118 Ind. 305, 20 N.E. 843, 10 Am.St.Rep. 136]." (Emphasis supplied.) 188 Ind. at page 118, 122 N.E. at page 332.

■ Applying the principles set forth in the Indiana cases last cited, we cannot say as a matter of law that plaintiff was guilty of contributory negligence. Thus the evidence, viewed most favorably to plaintiff, tends to show that, though he was familiar with the crossing, defendant's warning signal was not flashing, that plaintiff approached at a speed of about 20 miles per hour, and that defendant's train was being operated at a speed of over 40 miles per hour in violation of an ordinance, and that plaintiff looked to the northeast from points 250, 180–200 and 100–110 feet east of the crossing respectively, but did not see the train until it was too late to avoid a collision. Though photographs introduced by both parties indicate that from each of these points the view of defendant's right-of-way was good for substantial distances northeast of the crossing, and that, from the point where he first looked the east rail of defendant's main line was visible for some 700 feet, nevertheless, there was some obstruction to plaintiff's view by trees and shrubbery. On these facts, we think the question whether he was contributorily negligent was properly left to the jury. Lake Erie & Western R. R. Co. v. McFarren, supra; Pennsylvania R. R. Co. v. Boyd, supra.

Notwithstanding this conclusion, however, we are of the opinion that the judgment must be reversed. On March 14, 1952, defendant filed a motion to amend its answer to the complaint by adding thereto a third defense. The tendered answer averred that the collision arose

out of and in the course of plaintiff's employment by Ellis; that both plaintiff, as employee, and Ellis, as employer, elected to come under the Indiana Workmen's Compensation Law; that plaintiff had made application for benefits under the statute, had received in excess of $7,000 and was still receiving statutory benefits for the injuries of which he complains; and that these facts constituted a complete settlement with Ellis and its insurance company for the injuries suffered by him, which, in turn, constituted a bar to his claim against defendant. In considering this motion the court apparently relied on plaintiff's verified objections, which tended to show that no claim had been presented to the Industrial Board of Indiana for compensation.

■■ We are of the opinion that the court erred in overruling the motion. We are not concerned with whether the decision of insufficiency of the third defense on affidavits accords with procedural practice in Indiana. Under Rule 15(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A., leave to amend must be freely given, commensurate with the requirements of justice, and no proposed amendment to a pleading should be denied unless it appears to a certainty that the moving party "would not be entitled to any relief under any state of facts which could be proved in support of its claims." Peterson Steels v. Seidmon, 7 Cir., 188 F.2d 193, 195. However unlikely it may have seemed that defendant could sustain its defense, it, nevertheless, was entitled to an opportunity to prove it. Ibid; Kirke v. Texas Company, 7 Cir., 186 F.2d 643, 647; Chicago & N. W. R. Co. v. Chicago Packaged Fuel Co., 7 Cir., 183 F.2d 630; Asher v. Ruppa, 7 Cir., 173 F.2d 10, 12.

■ If plaintiff has made a full settlement of his claim with his employer under the Indiana Compensation Act as averred in the proposed amended answer, he can not recover against defendant. Pittsburgh C., C. & St. L. R. Co. v. Parker, 191 Ind. 686, 132 N.E. 372, 134 N.E. 890, 19 A.L.R. 751; Schlavick v. Manhattan Brewing Co., D.C., 103 F.Supp. 744, 747. And, in Indiana, whether a plaintiff has accepted compensation under the Act has been held to be a question for the jury. Pentecost Const. Co. v. O'Donnell, 112 Ind.App. 47, 39 N.E.2d 812. Defendant was entitled to plead its statutory defense and to sustain, if it could, the burden of proving it as a bar to plaintiff's claim. To deny this was prejudicial error. F.R.C.P. 15(a); Peterson Steels v. Seidmon, 7 Cir., 188 F.2d 193.

Two other suggestions probably merit some consideration. The first relates to the denial of motions by defendant for leave to amend its answer so as to bring Ellis into the cause by way of counterclaim for damage to its locomotive, and to amend further by pleading Ordinance No. 1615 of the City of Anderson as the applicable one. The second has to do with rulings excluding from the evidence Ordinance 1615 and the testimony of witness English.

■ The first contention must fail. The claim against Ellis was not a compulsory counterclaim within the meaning of Rule 13(b) F.R.C.P., 28 U.S.C.A., since Ellis was not a party to this cause, but was permissive merely, Rule 13(h) F.R.C.P., 28 U.S.C.A. As it was permissive, a separate basis of federal jurisdiction became essential. Measurement's Corp. v. Ferris Instruments Corp., 3 Cir., 159 F.2d 590; Lesnik v. Public Industrials Corp., D.C., 51 F.Supp. 994; McCarthy v. M. & M. Transp. Co., D.C., 5 F.R.D. 290. As both Ellis and defendant are Indiana corporations, no basis for federal jurisdiction was shown. Furthermore, in cases of this nature, wherein adjudication of the whole claim between the plaintiff and defendant is not dependent on the presence of an alleged joint tortfeasor, whether to permit a counterclaim against such third party rests in the sound discretion of the trial court. Lesnik v. Public Industrials Corp., supra. We conclude that the denial of defendant's motion to bring Ellis into the cause was not improper.

Nor was it error to overrule defendant's motion to amend its answer so as to plead Ordinance 1615. In his original complaint, plaintiff charged defendant with violation of this ordinance, adopted by the City of Anderson on March 17, 1938, fixing the speed limit for trains operated within the city at 40 miles per hour. Later, before trial, the complaint was amended to aver violation of Ordinance 1611, adopted on January 24, 1938, which fixed a limit of 25 miles. Thereupon defendant moved to amend its answer so as to include Ordinance 1615.

On plaintiff's objection and on the determination that Ordinance 1615, adopted as an amendment to Ordinance 1611, had not been published, as required by the statute requiring publication of penal ordinances, the trial court denied defendant's motion. We think this was not erroneous. Although Ordinance 1615 was intended as an amendment to section 1 of Ordinance 1611 to change the speed limit from 25 to 40 miles per hour and did not purport to alter the penal provision of section 2, the amendatory act and the amended statute must be construed as one. Schock v. Chappell, 231 Ind. 480, 484, 109 N.E.2d 423; Pomeroy v. Beach, 149 Ind. 511, 49 N.E. 370. Although the specific question before us has not been presented to any court of review in Indiana, when the language of the Supreme Court of that state in Bartley v. Chicago & E. I. Ry. Co., 216 Ind. 512, at page 528, 24 N.E.2d 405, is borne in mind, the conclusion seems inescapable that the Indiana courts would construe Ordinance 1615 as a penal ordinance which is valid only after publication in accord with the applicable state statute. No presumption prevails in favor of the validity of such an ordinance, Bartley v. Chicago & E. I. Ry. Co., supra; Central Indiana R. Co. v. Wishard, 186 Ind. 262, 114 N.E. 970, and it was, therefore, incumbent on defendant to aver publication.

It follows that Ordinance 1615 and the testimony of witness English were properly excluded. The principle that one may rely on a statute as valid until its invalidity is adjudged does not apply to a case such as this, where no presumption prevails in favor of validity of the ordinance. Ordinance 1611, which was shown to have been properly adopted, fixed the applicable speed limit, and, under the Indiana authorities, violation of such an ordinance is negligence per se in the absence of extenuating circumstances. Bartley v. Chicago & E. I. Ry. Co., supra, and Pennsylvania Co. v. Hensil, 70 Ind. 569, are representative applications of this doctrine. Cf., St. Louis & S. E. Ry. Co. v. Mathias, 50 Ind. 65, 68.

We do not believe any other ground for admissibility was adequately stated in the offer of proof. Thus, defendant offered to prove that the city officials of Anderson, the defendant and all railroads passing through the City had for some 12 years relied on the 40 mile ordinance as applicable. This evidence was wholly insufficient to cure the inherent defect in enactment which prevented the ordinance from becoming law.

Since the cause must be remanded for a new trial, we need not consider other errors assigned. For the reasons stated the judgment is reversed and the cause remanded for a new trial.

SCHNACKENBERG, Circuit Judge (dissenting in part).

I concur in the reversal but dissent as to the remandment.

Believing that plaintiff was guilty of negligence which proximately contributed to his injuries, I would reverse the judgment below.

Viewed most favorably to plaintiff, the evidence reveals the following facts.

At the time of the accident on April 26, 1950, plaintiff was 40 years old and in the possession of normal eyesight and hearing. At about 6 a. m., when the sun was shining and the weather was clear and dry, plaintiff, employed regularly as a truck driver, was operating a tractor-trailer combination through Anderson, Indiana. He made about three trips a

week over a route passing in a westerly direction along West 25th Street across the single railroad track of defendant. West 25th Street was the southern city limits of Anderson. There were no bends or curves in the street. This was also true of the railroad track. Both the railroad track and the street where plaintiff was driving were level, that is, without any grade.

At this crossing there were located several sets of automatic flasher-light signals, which, however, were not working at the time of the accident. On top of each signal was mounted the usual crossbuck sign with the words "Railroad Crossing."

At the time in question, defendant was operating at a speed of 43 miles per hour in a southwesterly direction toward and over said crossing a passenger train consisting of two Diesel-electric locomotive units and 13 passenger, mail and baggage cars. Each of the locomotive units was 71 feet in length, 10½ feet in width, and 13 feet 11 inches in height, gray in color, with a white stripe.

Several blocks east of the crossing, plaintiff entered West 25th Street. From there to the crossing there were to his right no buildings, except a small concrete building, about 9 feet by 13 feet in size which was located about 88 feet east of the crossing and 32½ feet north of the center line of West 25th Street. There were two trees whose trunks were 33 feet north of the center line of West 25th Street and 132 feet and 165 feet respectively east of the crossing. There was a parking lot along the north side of West 25th Street, the easterly boundary of which was about 200 feet east of the crossing. From there it extended west to the small concrete building. Its westerly boundary paralleled the railroad track at a distance of 32 feet therefrom. Its northern boundary was parallel to West 25th Street and approximately 155 feet from the center line thereof. There were no buildings north of the parking lot and east of the railroad track. The building south of West 25th Street and east of the railroad track and nearest to

both of them was a gas building about 12 foot square which was about 39 feet east of the track and 12 feet southerly of a line drawn at right angles to the east rail of the railroad track where it intersected the south line of West 25th Street. A few feet east of this gas building was the northwest corner of a manufacturing building known as Guide Lamp Manufacturing plant.

As plaintiff proceeded west on West 25th Street at 20 miles an hour, knowing that he was about to cross a railroad track, he looked to his right (northeast) to see if there was anything on the track, when he was about 250 feet east of the crossing. He saw nothing. As he approached the crossing and when he was about 165 feet from it, he looked a second time to his right toward the railroad track. He did not see a train coming. He next looked to the right toward the railroad track as he was passing the concrete building, from a point indicated by plaintiff on a map in evidence as being about 110 feet east of the crossing. He testified that at this point he thought that he would have seen a train coming if it had been in that area. Looking north from this point, a view of the railroad track was afforded extending over 418 feet from the crossing toward which plaintiff was driving. Such a view would have revealed that the track at that distance from the crossing was elevated above the intervening ground between the track and the point in West 25th Street 110 feet east of the crossing, so that the tops of fence posts bordering the railroad right of way on the east, were several feet lower than the rails. As plaintiff looked north from this point, he reduced his speed to 15 miles per hour, at which speed he could have stopped in about 25 feet. Thereafter he did not look to his right until just before the crash, his attention being focused to his left toward the Guide Lamp Manufacturing plant south of 25th Street. He was primarily interested in that side of the road. As soon as he saw there was nothing coming from the south he looked to his right, he being then 15 feet from the

rail, at which time he noticed the train approaching. The front of his tractor then ran into the left side of the first Diesel locomotive unit about 12 feet from the front thereof. There is no evidence that he was relying on the flasher-light signals on the occasion in question.

There was no vehicular traffic, except plaintiff's tractor-trailer at or near the crossing at the time or just before the time of the collision.

Defendant made timely motions for a directed verdict in its favor on the ground that the evidence affirmatively showed that plaintiff was guilty of contributory negligence as a matter of law. On the same ground it made a motion for judgment notwithstanding the verdict. These motions were overruled by the trial court. They should have been sustained.

In Pittsburgh, C., C. & St. L. Ry. Co. v. Fraze, 150 Ind. 576, 50 N.E. 576, 65 Am.St.Rep. 377, the Indiana Supreme Court said that if a traveler, by looking, could have seen an approaching train in time to escape, it will be presumed, in case he is injured by a collision, either that he did not look, or, if he did look, he did not heed what he saw.

In Cleveland, C., C. & St. L. Ry. Co. v. Miller, 149 Ind. 490, 49 N.E. 445, at page 450, the court held that, while a traveler has a right to presume that the railroad company will discharge its statutory duty and give the signals as required by the law, still this does not relieve him from using his own senses, and exercising due care to avoid injury in crossing its track.

In Chesapeake & O. Ry. Co. v. Williams, 114 Ind.App. 160, 51 N.E.2d 384, at page 386, the court said:

"The courts of this state are thoroughly committed to the doctrine that a railroad crossing is a known place of danger, and its presence alone is a warning of the possible approach of trains. When about to cross a railroad a traveler on the highway must use reasonable care for his own safety, and it is requisite to such care 'that he look and listen attentively both ways, and if by looking he could have seen, and if by listening he could have heard, an approaching train in time to have avoided collision, it is presumed, if such collision occurs, that he either did not look and listen or did not heed what he saw and heard, in either of which events he is guilty of contributory negligence.' Baltimore & O. S. W. R. Co. v. Rosborough, 1907, 40 Ind.App. 14, 18, 80 N.E. 869, 870; Cleveland, C., C. & St. L. R. Co. v. Griffin, 1901, 26 Ind.App. 368, 58 N.E. 503; Pittsburgh, C., C. & St. L. Ry. Co. v. Fraze, 1898, 150 Ind. 576, 50 N.E. 576, 65 Am.St.Rep. 377; Morford v. Chicago, etc., R. Co., 1902, 158 Ind. 494, 63 N.E. 857; New York C. & St. L. R. Co. v. Miller, Adm'r, 1935, 101 Ind.App. 498, 200 N.E. 78; Grand Trunk Western R. Co. v. Briggs, 1942, [112 Ind. App. 360] 42 N.E.2d 367.

"As was said in Cleveland, C., C. & St. L. R. Co. v. Van Laningham, 1913, 52 Ind.App. 156, 164, 97 N.E. 573, 576: 'When a person before attempting to cross a railroad track does not heed the danger of his situation and fails to look and listen for an approaching train, he is guilty of negligence as a matter of law.'

"In the instant case, we have the appellee's own testimony that he did not look for an approaching train until a few seconds before he was struck, and there is no evidence, from any source or of any character, to the contrary. It is undisputed that the train that struck him was in plain view, and that he could have seen it at any point for a distance of 145 feet west of the crossing had he looked, and that at any time while traveling such distance he could have stopped his automobile within two or three feet and so avoided the accident. It seems clear to us that reasonable men can come to no other conclusion than that the appellee's own negligence contributed to his injuries, and thus his right to a recov-

ery on the first paragraph of his complaint is defeated."

These cases indicate that the law of Indiana is the same as the prevailing rule in the other states, such as Illinois, where in Greenwald v. Baltimore & O. R. R. Co., 332 Ill. 627 at page 631, 164 N.E. 142, at page 144, the court said:

"The rule has long been settled in this state that it is the duty of persons about to cross a railroad track to look about them and see if there is danger, and not to go recklessly upon the track, but to take proper precaution to avoid accident. It is generally recognized that railroad crossings are dangerous places, and one crossing the same must approach the track with the amount of care commensurate with the known danger, and when a traveler on a public highway fails to use ordinary precaution while driving over a railroad crossing, the general knowledge and experience of mankind condemns such conduct as negligence. * * * One who has an unobstructed view of an approaching train is not justified in closing his eyes or failing to look or in crossing a railroad track in reliance upon the assumption that a bell will be rung or a whistle sounded. No one can assume that there will not be a violation of the law or negligence of others and then offer such assumption as an excuse for failure to exercise care. The law will not tolerate the absurdity of allowing a person to testify that he looked but did not see the train when the view was not obstructed, and where, if he had properly exercised his sight, he must have seen it."

While on three occasions, when plaintiff was 100 or more feet east of the crossing, he looked toward the railroad track upon which a train from the north would come, for some reason he then dismissed from his mind the possibility of a train coming from that direction and thereafter focused his attention upon the possibility of a train coming from the south.

It was not until he was a few feet from the track that he again evinced any interest in a south-bound train. This strange division of the care which he was required to exercise for his own safety cannot be reconciled with the caution that an ordinarily prudent person would have exercised under the same or similar circumstances. While he could have stopped his truck in about 25 feet, he traveled about 100 feet without looking to the north. If during this interval he had looked north he could have seen the train approaching on a straight track with its large gray diesel locomotive units with a white stripe about them, against which the bright morning sun was directly shining. If under such circumstances a driver, after driving his vehicle into the side of a passing train, is permitted to recover for the personal injuries which he thereby sustains, the law is putting a premium upon careless driving. I cannot accede to such a doctrine.